### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| | NO.  17-483 |
| **v.** | |
| ANTHONY VINCENTE PANGELINAN | |

### <u>MEMORANDUM OPINION</u>

Anthony Pangelinan, who is incarcerated at FCI Cumberland, in Cumberland, Maryland, moves for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), in consideration of the dangers posed by COVID-19 to persons with underlying health issues.  In the alternative, Pangelinan requests placement on home confinement pursuant to the CARES Act.  For the reasons that follow, Pangelinan's motion will be denied.

### I.    BACKGROUND

Pangelinan is serving a sentence for bank robbery and attempted bank robbery.  He is 57 years old and describes himself as suffering from "hypertension/high blood pressure, coronary heart disease and mental health problems."  In consideration of these medical conditions and of the dangers posed by COVID-19, Pangelinan petitioned the FDC for early release on April 16, 2020, and his request was denied on April 30.  He now moves the Court for compassionate release pursuant to Section § 3582(c) and asks to be sentenced to time served.  In the alternative, Pangelinan requests placement on home confinement pursuant to the CARES Act.  The Government opposes his motion.

### II.   DISCUSSION

The First Step Act's amendments to Section 3582(c) "allow incarcerated defendants to seek compassionate release from a court on their own motion, not just through the Bureau of

Prisons." *United States v. Thorpe*, 2019 WL 6119214, at *1 (C.D. Ill. Nov. 18, 2019); *see* 18

U.S.C. § 3582(c)(1)(A) ("[T]he court, . . . upon motion of the defendant . . . may reduce the term

of imprisonment. . . .").  Specifically, provided the defendant has exhausted his administrative

remedies, Section 3582(c) permits a district court to reduce a defendant's sentence "after

considering the factors set forth in section [18 U.S.C.] § 3553(a) [1] to the extent that they are

applicable, if it finds that . . . extraordinary and compelling circumstances warrant such a

reduction . . . and that such reduction is consistent with applicable policy statements issued by

the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  According to U.S.S.G. § 1B1.13,

which is the Sentencing Commission's policy statement on Section 3582(c)(1)(A), a defendant's

medical condition may constitute a basis for release.  That said, "affliction with various medical

conditions alone is insufficient to justify compassionate release.  Instead, the threshold question

is whether defendant has demonstrated 'extraordinary and compelling' reasons for [such]

release." *United States v. Viteri*, 2020 WL 3396804, at *4 (D.N.J. June 19, 2020).  Section

1B1.13 defines a condition as "extraordinary and compelling" if it "substantially diminishes

[defendant's ability] to provide self-care within the environment of a correctional facility and

from which he . . . is not expected to recover."  *See* U.S.S.G. § 1B1.13 n.1.  Additionally, per 18

U.S.C. § 3142(g), to determine whether a defendant is entitled to compassionate release, a court

must consider whether the defendant poses a danger to others and to the community.[2]  *See id.* at

---

[1] Section 3553(a) directs a sentencing court to consider:
    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2) the need for the sentence imposed—
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just
        punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other
        correctional treatment in the most effective manner.

[2] In the compassionate release context, "[t]he relevant factors in this section are: (1) the nature of the charged

§ 1B1.13(2).

Here, the parties agree and the record indicates that Pangelinan has exhausted his administrative remedies; therefore, his motion is ripe for consideration.  And, while the parties also agree that Pangelinan suffers or has suffered from certain health issues, they disagree about whether these issues present an extraordinary and compelling circumstance warranting release. Ultimately, while recognizing Pangelinan's health issues, the government argues that Pangelinan is not entitled to relief because "his medical conditions are appropriately managed at the facility" and because "[he] continues to present a danger to the community."

Looking to whether Pangelinan's condition in conjunction with the COVID-19 crisis presents an extraordinary and compelling circumstance, Pangelinan has presented no evidence that his conditions are not being appropriately managed by the prison, much less that his conditions "substantially diminish[]" his ability to "provide self-care."  *See* U.S.S.G. § 1B1.13 n.1.  In fact, medical records indicate that Pangelinan is receiving medication for his high blood pressure, has had "[n]o medications or complaints in over a year concerning his [mental health]," and that, as of 2018, his "chronic ischemic heart disease" had been "resolved."  Further, Pangelinan has presented no compelling evidence that he is especially likely to contract the virus while incarcerated.  While six inmates at FCI Cumberland have tested positive for COVID-19, all six of those inmates are now recovered.  *See* https://www.bop.gov/coronavirus/.  Further, the Bureau of Prisons ("BOP") has instituted strict containment measures at the prison, such as mandatory quarantine, regular health checks, limits on inmate movement, and limitations on

---

offense; (2) the defendant's history and characteristics, including the person's character and whether the person was on parole or probation at the time of the offense; (3) the nature and seriousness of the danger to the community posed by the person's release."  *United States v. Reyes*, 2020 WL 1663129, at *3 (N.D. Ill. Apr. 3, 2020); *see also United States v. Johns*, 2019 WL 2646663, at *3 (D. Ariz. June 27, 2019) ("Factors to consider include the nature of the offense, the history and characteristics of the defendant, and the nature of the danger.").

entry by outside individuals, to prevent spread of the virus within the prison population.  *See* https://www.bop.gov/resources/news/20200313_covid-19.jsp.[3]  As the Third Circuit recently noted, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  Therefore, considering that Pangelinan's specific health issues and general health concerns are being appropriately managed by the BOP, the fact that Pangelinan faces *some* potential risk of contracting COVID-19 in prison does not constitute a basis for release.

Further, even if Pangelinan's health issues did constitute an extraordinary and compelling circumstance favoring release, the Section 3553(a) factors would disfavor such release.  While it is uncontested that Pangelinan's underlying offenses—bank robbery and attempted bank robbery—did not involve the use of or explicit threat of violent, Pangelinan's criminal history indicates a willingness to resort to violence as well as a general disregard for the law and public safety.  To wit, Pangelinan's Presentence Investigation Report ("PSR")[4] indicates 20 adult convictions (apart from the bank robbery offenses for which he is currently incarcerated) over the past 34 years including convictions for theft, robbery, and burglary, as well as convictions for

---

[3] While Pangelinan suggests that, if released, he could live with his mother in "the State of Pennsylvania" he has provided no information regarding the protections in place at that location to ward off the virus.  Indeed, simply living at his mother house would not necessarily protect him from the virus given that, as of the writing of this opinion, there are about 90,000 confirmed COVID-19 cases in Pennsylvania.  *See* https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx.  Accordingly, there is little basis by which to determine one way or another whether he is at greater risk in or out of jail.

[4]  Though the Third Circuit has not specifically spoken on the applicability of PSRs in the compassionate release context, the Court has found PSRs to be generally reliable indicators of criminal history.  *See United States v. Cortez Ponce*, 339 F. App'x 249, 253 (3d Cir. 2009) (finding district court properly relied on criminal history as outlined in defendant's PSR in deciding to impose a special condition of supervised release).  Courts across the country have relied on PSRs in evaluating defendant's criminal and medical history in the compassionate release context.  *See, e.g.*, *United States v. Viteri*, 2020 WL 3396804, at *4 (D.N.J. June 19, 2020); *United States v. Todd*, 2020 WL 3405735, at *3 (E.D. Tex. June 19, 2020); *United States v. Arceo*, 2020 WL 2614873, at *1 (N.D. Cal. May 22, 2020).

assault, recklessly endangering another person, and robbery while inflicting the threat of immediate bodily injury on another.  The Court thus finds that reducing Pangelinan's sentence to time served would be inconsistent with the Section 3553(a) factors.

Finally, turning to the Section 3142(g) factors for assessing dangerous to others and the community, the same history and characteristics which disfavor release under Section 3553(a) would also disfavor release under this section.  While Pangelinan claims that he has "changed . . . direction in his life," he remains a serial offender who has demonstrated a consistent disregard for the law and for public safety.  The fact that Pangelinan's criminal activity has continued virtually unabated for his entire adult life gives the Court little confidence that he would abide by the law if released early.  Consequently, Pangelinan would present a danger to others and the community if released.

For the reasons set forth above, Pangelinan's motion for compassionate release will be denied.[5] An appropriate order follows.

July 9, 2020                                             BY THE COURT:


                                                        */s/ Wendy Beetlestone*
                                                        _____
                                                        **WENDY BEETLESTONE, J.**

---

[5] Pangelinan's alternative request for placement on home confinement shall also be denied in that "the jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons"—not with this Court.  *Cordaro v. Finley*, 2020 WL 2084960, at *6 (M.D. Pa. Apr. 30, 2020); *United States v. Cruz*, 2020 WL 1904476, at *4 (M.D. Pa. Apr. 17, 2020) ("[C]ourts do not have power to grant relief under section 12003 of the CARES Act." (internal quotations and alterations omitted)); *see also* 18 U.S.C. § 3621 ("[A] designation of a place of imprisonment . . . is not reviewable by any court.").